IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :
                                  :
    vs.                           :
                                  :   CRIMINAL NO. 1:CR-09-079-01
ROGER SEDLAK,                     :
            Defendant             :      (Judge Caldwell)
                                  :
                                  :
                                  :

*M E M O R A N D U M*

I.  *Introduction*

        Defendant, Roger Sedlak, has filed a pro se motion under 28 U.S.C. § 2255

to vacate his conviction and sentence, raising numerous grounds for relief.

        On March 4, 2009, Defendant was named in a three-count indictment

charging him with: (1) a single conspiracy under 18 U.S.C. § 371 to violate 18 U.S.C. §

2421, interstate transportation with the intent to engage in prostitution, and to violate 18

U.S.C. § 2422(a), persuading, inducing, coercing and enticing interstate travel to engage

in prostitution; (2) a substantive offense of violating section 2421; and (3) a substantive

offense of violating section 2422(a).[1]  Also named in the indictment were Defendant's

wife, Marianna Sedlak, and Kelli Kaylor.

        In November 2009, an eighteen-count superseding indictment was filed.

This indictment repleaded the original three charges and added seven counts against

_____

        [1]  The indictment refers to section 2422, but more specifically the offense was under
section 2422(a).  See order of July 17, 2014 (Doc. 405).

Defendant of violating 18 U.S.C. § 1028A(a)(1), aggravated identity theft; seven counts of violating 18 U.S.C. § 1343, wire fraud; and one count of violating 18 U.S.C. § 1956(a)(1)(B)(i), money laundering.

In a written plea agreement, Defendant agreed to plead guilty to four counts of the superseding indictment, Counts 1, 3, 5 and 18.  Count I was the conspiracy offense described above.  Count 3 charged Defendant with the substantive offense of violating section 2422(a) by "knowingly persuad[ing], induc[ing], entic[ing] and coerc[ing] . . . an individual to travel in interstate commerce to engage in prostitution . . . ." (Doc. 111, Superseding Indictment, p. 6).  Count 5 charged Defendant with violating 18 U.S.C. § 1028A(a)(1), aggravated identity theft, by "possess[ing] and us[ing], without lawful authority, a means of identification of another person during and in relation to the commission of wire fraud, knowing that the means of identification belonged to another person . . . ." (*Id.*, p. 7).  Count 18 charged Defendant with a violation of 18 U.S.C. § 1956(a)(1)(B)(i), money laundering, by engaging in "financial transactions affecting interstate . . . commerce which involved the proceeds of . . . transport[ing] . . . individuals in interstate commerce for the purpose of prostitution, knowing that the transactions were" intended to "disguise," in part, the "source, ownership and control of the proceeds . . . ." (*Id.*, p. 10).

Defendant was sentenced to an aggregate term of 145 months' imprisonment and to ten years of supervised release.  A fine of $5,000 was also imposed.

His conviction and sentence were affirmed on direct appeal.  *See United States v. Sedlak*, 529 F. App'x 253 (3d Cir. 2013)(nonprecedential).

II.  *Applicable Law*

Under 28 U.S.C. § 2255, a federal prisoner may challenge his conviction or sentence as being in violation of the federal Constitution or federal law.  *See Massey v. United States*, 581 F.3d 172, 174 (3d Cir. 2009)("A motion to vacate sentence pursuant to 28 U.S.C. § 2255 is the means to collaterally challenge a federal conviction or sentence").  *See also* 28 U.S.C. § 2255(a)(providing that a defendant can challenge the conviction, in part, "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States").

A motion for 2255 relief cannot rest upon vague and conclusory allegations.  *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000)(vague and conclusory allegations are insufficient for a section 2255 motion); *Johnson v. United States*, 294 F. App'x 709, 710 (3d Cir. 2008)(nonprecedential).  *See also* Rule 2(b)(2) of the rules governing section 2255 proceedings ("[t]he motion must . . . "state the facts supporting each ground" for relief).  A district court may dispose of such allegations without further investigation.  *Thomas*, 221 F.3d at 437.  It might also consider an amendment that supplies the necessary specificity.  *Id.* at 436.

In deciding a 2255 motion, the court need not consider clams that have already been decided on direct appeal.  *See United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014)("issues resolved in a prior direct appeal will not be reviewed again by

way of a § 2255 motion"); *United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir.

1993)(generally section 2255 "may not be employed to relitigate questions which were

raised and considered on direct appeal")(quoting *Barton v. United States,* 791 F.2d 265,

267 (2d Cir. 1986)); *United States v. Orejuela,* 639 F.2d 1055, 1057 (3d Cir. 1981)("Once

a legal argument has been litigated and decided adversely to a criminal defendant at his

trial and on direct appeal, it is within the discretion of the district court to decline to

reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. §

2255.").

III.  *Discussion*

Defendant presents the following claims, principally through his 2255

motion, but also through a motion incorporated by reference in his 2255 motion, through

his reply brief, and through motions to amend and to supplement the 2255 motion.  We

recognize that normally some of these claims would not be cognizable in 2255

proceedings as they should have been raised on direct appeal, and indeed some were.

However, given the number of issues raised, and that some form the bases of ineffective-

assistance-of-counsel claims, we think it best to simply address them all.[2]

---

[2] Defendant's 2255 motion comes in two parts.  Defendant made a mistake in submitting the motion, docketed as Doc. 381.  He corrected that by submitting Doc. 395.  The result is that the first 31 pages of the motion can be found at Doc. 381 and pages 32-49 can be found at Doc. 395.

A.  *The Claim that Defendant's Sixth Amendment
Right to Counsel Was Denied on Direct Appeal*

Defendant claims that the Third Circuit denied him his right to counsel on his direct appeal.  He maintains he suffered prejudice as a result, including the failure of the Third Circuit to take his pro se appellate brief seriously which resulted in the dismissal of his pro se arguments without opinion.  (Doc. 381, ECF pp. 3-4).  He also claims he was denied his right to counsel for the filing of a petition for a writ of certiorari with the United States Supreme Court.  (*Id.*, ECF p. 3).

We provide some background on this claim.  Counsel who represented Defendant before this court also represented Defendant on direct appeal.  Counsel filed a brief on Defendant's behalf and a reply brief to the government's opposition brief. *Sedlak*, *supra*, 529 F. App'x at 254.  The Third Circuit docket reveals that Defendant filed a motion for new counsel, which the Third Circuit denied on May 17, 2012.  *United States v. Sedlak*, No. 11-2892 (3d Cir.).  Defendant then filed a motion to proceed pro se, which was granted on June 13, 2012, in the same order granting counsel's motion to withdraw. Thereafter, on July 12, 2012, the Third Circuit denied Defendant's motion to appoint standby counsel, and on November 19, 2012, denied Defendant's motion for counsel. On January 30, 2013, the court of appeals denied another motion for appointment of counsel.

We reject this claim.  In regard to the direct appeal, the docket shows Defendant invoked his right to self-representation, so he could not have been denied his right to counsel.  In regard to a certiorari petition, Defendant has no constitutional right to

counsel on such a petition.  *See Ross v. Moffitt*, 417 U.S. 600, 616-17, 94 S.Ct. 2437,

2447, 41 L.Ed.2d 341 (1974); *In re Morton*, 491 F. App'x 291, 293 n.4 (3d Cir.

2012)(nonprecedential); *Richards v. United States*, 406 F. App'x 447, 447 (11th Cir.

2010)(nonprecedential); *United States v. Fernandez*, 397 F. App'x 433, 436 (10th Cir.

2010)(nonprecedential); *Clark v. Johnson*, 227 F.3d 273, 283 (5th Cir. 2000).

>    B.  *Defendant's Claim that the Government Violated*
>        *His Sixth Amendment Right to Joint Representation*
>        *With His Co-Defendant Spouse, Marianna Sedlak,*
>        *and that the Government Intruded into the Attorney-*
>        *Client Relationship and the Marital Relationship*

Defendant claims that he and his co-defendant spouse had agreed on joint

representation but that the prosecutor told the four lawyers who represented Defendant

at different times that he would not allow it, thereby violating his right to a lawyer of his

choice.  (Doc. 381, ECF pp. 7-9).  We reject this claim as it has already been decided on

direct appeal.  As the government notes, Defendant raised it on direct appeal in his pro

se appellate brief filed on January 3, 2013, at pp. 60-64, and the claim was rejected by

the Third Circuit as meritless.  529 F. App'x at 256.[3]

---

[3] As the Third Circuit noted, Defendant's pro se appellate brief consisted of two parts, one filed on January 3, 2013, and the other filed on January 22, 2013.  529 F. App'x at 254. This was a total of 113 pages with twenty-two separate issues.  529 F. App'x at 256.  The Third Circuit ruled that, except for the ineffectiveness claims, the claims were meritless.  *Id.* Defendant argues that we can consider claims raised on appeal "because appellate rejection of a group of claims as either 'meritless or un-preserved'" leaves it "unclear on which basis the court rejected the claims."  (Doc. 423, ECF p. 10, Defendant's reply brief).  Defendant is incorrect as the Third Circuit plainly rejected the claims on the merits, not on the additional and alternative reason that they were "un-preserved."

Defendant also claims that the government violated due process by intruding into the privileged communications between a husband and wife.  (Doc. 381, ECF pp. 9-11).  He asserts the government's conduct was so egregious that it warrants not only a vacatur of his conviction and sentence but also dismissal of the indictment.

We disagree.  Defendant bases this claim on the monitoring of his telephone conversations while he was being detained pre-trial at the Adams County Prison.[4]  Defendant was advised these calls were being recorded.  Defendant therefore cannot claim any improper intrusion into the marital relationship based on the government's use of these recorded conversations.[5]

Nor do we find any merit in Defendant's assertion that the government's motivation for opposing his release pretrial was for the purpose of being able to eavesdrop on his conversations with his wife.  At the several hearings held to decide on Defendant's pretrial release, the government argued he was a flight risk, and the court agreed.  Defendant's argument that the government acted improperly by seeking his wife's services also fails.  His wife was a defendant in the case as well.  Seeking her "services" was merely seeking her cooperation, as is done in many criminal cases.

---

[4]  Defendant refers to this monitoring in his January 3, 2013, pro se appellate brief at page 29.

[5]  These recorded conversations were used at the April 16, 2009, pretrial detention hearing.  (Doc. 58).

C. *The Claim that Defendant Was Improperly Denied the Benefit of the* Alleyne *Case in the Calculation of his Guidelines Range and the Imposition of the Minimum Twenty-Four Month Sentence for the Aggravated Identity Theft Offense*

Defendant maintains that the court improperly resolved a number of sentencing issues in violation of *Alleyne v. United States*, ____ U.S. ____, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013).  In *Alleyne*, the Supreme Court held that any fact that increases the statutory mandatory minimum sentence for an offense is an element of the crime that must be submitted to the jury and cannot be determined by the court at sentencing.  *Id.* at ____, 133 S.Ct. at 2155.  *See also United States v. Smith*, 751 F.3d 107, 117 (3d Cir. 2014)("*Alleyne* simply held that, as with facts necessary for the imposition of a statutory maximum sentence, facts that trigger a statutory mandatory minimum sentence must, under the Sixth Amendment, also be submitted to a jury.").

This claim has no merit.  We begin by noting that Defendant is here on collateral review, and *Alleyne* does not apply to cases on collateral review.  *United States v. Reyes*, 755 F.3d 210, 212 (3d Cir. 2014).  We recognize that Defendant asserts he is entitled to invoke *Alleyne* because it was decided shortly before the Third Circuit ruled on his direct appeal and hence while his appeal was still pending.  Nonetheless, that does not change the fact that he is before us on collateral review.  We also note that Defendant sought reconsideration before the Third Circuit on the basis of *Alleyne,* but that the Third Circuit declined to grant reconsideration.  *See United States v. Sedlak*, No. 11-2892 (3d Cir. Sept. 3, 2013).

Next, Defendant has no *Alleyne* claim in any event.  He makes the following claims based on *Alleyne*.  First, the section 1028A(a)(1) aggravated identity theft conviction in Count 5 violates *Alleyne* because that offense requires as an essential element a conviction for an underlying offense listed in 18 U.S.C. § 1028A(c).  The superseding indictment charged Defendant with seven counts of wire fraud in violation of 18 U.S.C. § 1343, which can be an underlying offense, but those offenses were dismissed as part of the plea bargain.  Hence, Defendant argues the aggravated identity offense lacked an essential element established either by a jury verdict or the guilty plea.  In Defendant's view, the element was supplied by judicial fact finding in violation of *Alleyne*.

This claim lacks merit.  All of the elements of this offense were established by Defendant's guilty plea.  At the June 3, 2010, change-of-plea hearing, the prosecutor described the offenses to which Defendant was pleading guilty, including the offense of aggravated identity theft and its elements.  (Doc. 253, change-of-plea transcript, ECF p. 3).  He also summarized the facts the government was ready to prove if Defendant had gone to trial.  Pertinent here is the description of Defendant's conduct that constituted the offense of aggravated identity theft.  That offense facilitated Defendant's interstate prostitution business.

As summarized by the prosecutor, Defendant used prepaid debit cards to book the hotel rooms for the acts of prostitution.  To activate the cards Defendant had to use the names of real persons along with their identifying information, but the cards did

not need to have a person's name on them.  Defendant was thus able to conceal his own

identity when paying for the hotel rooms.  (*Id.*, ECF pp. 13-14).  The prosecutor

mentioned the name of one such actual person and that his identifying information was

used to activate a prepaid debit card that was used to pay for hotel rooms in

Pennsylvania, New York and New Jersey.  (*Id.*, ECF p. 15).  The use of this person's

identifying information was one of the wire fraud charges charged in Count 14 of the

superseding indictment.  Defendant's guilty plea established this element of the section

1028A(a)(1) offense, and there was no *Alleyne* violation.  We add that the government

did not have to charge Defendant with an underlying offense to charge him with a

violation of section 1028A(a)(1).  *United States v. Jenkins-Watts*, 574 F.3d 950, 970 (8th

Cir. 2009).[6]

Defendant claims that the following sentencing enhancements violate

*Alleyne* because they were based on factual findings by the court: (1) two levels under

U.S.S.G. § 3C1.1 for obstruction of justice; (2) five levels under U.S.S.G. § 3D1.4 for the

number of victim prostitutes; (3) two levels under U.S.S.G. § 2S1.1(b)(3) because the

offense involved sophisticated money laundering; and (4) four levels under U.S.S.G. §

3B1.1(a) because Defendant was the organizer or leader of a criminal activity that

involved five or more participants and was otherwise extensive.  Defendant also claims

that our determination of the start date of the offenses violated *Alleyne*, as well as the

---

[6]  Defendant has quoted some language from *Flores-Figueroa v. United States*, 556 U.S. 646, 129 S.Ct. 1886, 173 L.Ed.2d 853 (2009), in support of this claim.  See Doc. 381, ECF p. 17.  This language does not assist Defendant as the language was not important to the Court's decision in *Flores-Figueroa*.

imposition of a ten-year term of supervised release on the section 2422(a) interstate

prostitution offense and the requirement that he comply with applicable state sex-offender

registration requirements.[7]

These claims lack merit.  *Alleyne* held that any fact that increased the

statutory mandatory minimum sentence has to be submitted to the jury.  133 S.Ct. at

2163-64.  There are no statutory minimum sentences for Count 1, the conspiracy charge

under 18 U.S.C. § 371; Count 3, the interstate prostitution charge under 18 U.S.C. §

2422(a); and Count 18, the money laundering charge under 18 U.S.C. § 1956(a)(1)(B)(i).

*Alleyne* would therefore not apply to guidelines enhancements for these offenses

because Defendant's sentencing range would have been established by the guidelines,

not by the statutory minimum.  *Alleyne* does not apply to fact finding by the sentencing

court that leads to the imposition of sentencing enhancements *within* the statutory range.

*See United States v. Smith*, 751 F.3d 107, 117 (3d Cir. 2014)("*Alleyne* did not curtail a

sentencing court's ability to find facts relevant in selecting a sentence *within* the

prescribed statutory range.")(emphasis in original)(citing *Alleyne*, 133 S.Ct. at 2163).

As to the section 1028A(a)(1) aggravated identity theft charge in Count 5,

there is a minimum sentence of two years.  However, *Alleyne* does not apply because

there was no judicial fact finding for the imposition of that sentence.  As noted above,

---

[7] As part of the sentence, we required Defendant to "comply with the registration requirements of the sex offender registration agency in the state where he resides, is employed, carries on a vocation, or is a student."  (Doc. 285, sentencing order, ECF p. 5).

-11-

Defendant pled guilty to that offense, so his admission of guilt is the basis of that conviction, not judicial fact finding.

Nor does *Alleyne* assist Defendant in his challenge to the imposition of a ten-year term of supervised release on the section 2422(a) interstate prostitution offense. He asserts that under 18 U.S.C. §§ 3559(a)(3) and 3583(b)(2) the maximum term of supervised release for the offense is three years as a Class C felony.  This is not an *Alleyne* claim, but Defendant is mistaken in any event.  Under 18 U.S.C. § 3583(k), Defendant's maximum term of supervised release is life, so a ten-year term was proper. We also reject Defendant's challenge to the requirement that he comply with applicable state sex-offender registration requirements.  This requirement did not result in an increased sentence, and Defendant himself admits he may be required to register as a sex offender.  (Doc. 381, ECF p. 24).

D. *The Claim that the Court and Government Breached the Plea Agreement*

Defendant filed a "motion to resentence pursuant to the terms of the plea agreement."  (Doc. 367).  Defendant incorporated this motion into his 2255 motion.  If the government enters into a plea agreement, it is held to the terms of that agreement. *United States v. Davenport*, 775 F.3d 605, 609 (3d Cir. 2015).  Defendant claims in the motion to resentence the following breaches of the plea agreement.

The court breached the terms of the written plea agreement when as part of the sentence: (1) SORNA and state sex-offender registration requirements were imposed

on Defendant;[8] (2) a ten-year term of supervised release was imposed; and (3) the fine was payable by deducting every three months 50% of the amount deposited into Defendant's inmate trust account when Defendant only agreed in the plea agreement to deduction of up to 50% of his prison salary.  (Doc. 207, plea agreement ¶ 9).

On its first two parts, this claim lacks merit for the simple reason that the court was not a party to the plea agreement.  See Doc. 207, plea agreement.  It therefore could not have breached it.  The agreement itself recognized the court was not a party. (*Id.* ¶ 19)(Defendant recognizes that "the Court is not a party to and is not bound by this Agreement nor any recommendation made by the parties").  Additionally, the first two claims were raised on direct appeal in the first section of Defendant's January 3, 2013, pro se brief and rejected by the Third Circuit.  See note 3 above.

We reject the third part of the claim because the Defendant cannot rely on section 2255 to challenge the terms of a sentencing court's imposition of a fine.  *See United States v. Walker*, 149 F. App'x 55, 57 (3d Cir. 2005)(nonprecedential)("numerous courts have recognized that '§ 2255's language clearly and unambiguously limits its applicability to defendants seeking release from custody.  It is not available to those, like the defendant, who challenge only fines or restitution orders.'")(quoted case omitted). *See also Kaminski v. United States*, 339 F.3d 84, 86-89 (2d Cir. 2003).

---

[8]  "SORNA" is the Sex Offender Registration and Notification Act.  *See* 42 U.S.C.A. § 16901 et seq.

Defendant argues the government breached the terms of the agreement in the following ways.  First, the government advocated for the imposition of: (1) SORNA and state sex-offender registration as part of the sentence; and (2) the ten-year term of supervised release on Count 3.  Defendant argues there was a breach because language describing the minimum term of supervised release for Count 3 was stricken from paragraph 2 of the agreement along with paragraph 4.  The following language from paragraph 2 was stricken from the agreement: "Count 3 carries a minimum term of supervised release of 5 years up to life."  Paragraph 4 was also stricken.  That paragraph dealt with SORNA requirements, and would have required Defendant to recognize that the court "must order" that he "comply with all sex offender registration requirements under the Sex Offender Registration and Notification Act . . . ."  Defendant also relies on defense counsel's remarks at the guilty-plea colloquy concerning the supervised-release term for Count 3.  Counsel noted that the above-quoted language from paragraph 2 had been stricken.  He also challenged the language in paragraph 1, what he called "similar language" to paragraph 2, which stated that Count 3 had "a maximum term of supervised release of at least 5 years and up to life."  (Doc. 253, ECF p. 6).  Focusing on the minimum term of supervised release, defense counsel stated his belief that a minimum term of supervised release of five years would apply only to a sex offense involving minors.  (*Id.*).

Defendant argues that the striking of the language and defense counsel's questioning of the applicability of the maximum term stated in paragraph 1 means that

the agreement barred sex-offender registration and the imposition of a ten-year term of supervised release.

We disagree.  The claim is that the government should not have advocated for SORNA or state sex-offender registration or a ten-year term of supervised release, but Defendant actually asserts that the government breached the agreement by not arguing against the imposition of these terms when recommended by the probation office and adopted by the court in its sentencing order.  (Doc. 367, ECF pp. 13-16).  There is nothing in the agreement that bars the imposition of these requirements, and the government did not breach it by failing to argue against them.

Second, Defendant claims the government breached the agreement by advocating for a sentence based on guideline enhancements, which according to him were really additional charges.  Defendant relies on paragraph 12 of the agreement in which the government agreed not to bring other criminal charges against Defendant arising out of the offenses described in the agreement.  (Doc. 207, plea agreement ¶ 12).

We disagree.  Defendant contends the government could not have argued for the following enhancements: (1) two levels under U.S.S.G. § 3C1.1 for obstruction of justice; (2) five levels under U.S.S.G. § 3D1.4 for the number of victim prostitutes; (3) two levels under U.S.S.G. § 2S1.1(b)(3) because the offense involved sophisticated money laundering; and (4) four levels under U.S.S.G. § 3B1.1(a) because Defendant was the organizer or leader of a criminal activity that involved five or more participants and was

otherwise extensive.  These are not additional charges barred by the agreement; they

represent conduct for which the guidelines allow an increase in the sentence.

Defendant was aware of this through the plea agreement itself.  Paragraph

1 of the plea agreement provided:

> The defendant further agrees that any legal and factual issues
> relating to the application of the Federal Sentencing
> Guidelines to the defendant's conduct, including facts that
> support any specific offense characteristic or other
> enhancement or adjustment and the appropriate sentence
> within the statutory maximums provided for by law, will be
> determined by the Court after briefing, or a pre-sentence
> hearing, or at a sentencing hearing.

(Doc. 207, Plea Agreement ¶ 1).  The government reserved the right to recommend a

sentence "that it consider[ed] appropriate based upon the nature and circumstances of

the case and the defendant's participation in the offense," and "specifically reserve[d] the

right to recommend a sentence up to and including the maximum sentence of

imprisonment . . . ."  (*Id.* ¶ 14).

The guilty-plea colloquy also indicates Defendant understood the possibility

the government would argue for enhancements.  At the change-of-plea hearing, the court

conducted a colloquy with Defendant under Fed. R. Crim. P. 11(b).  In connection with a

sentence, the court stated:

> You heard [the prosecutor] outline the maximum penalties for
> these four offenses.  Your sentence can't be determined until
> a presentence report is prepared.  You and [defense counsel]
> will have an opportunity to make any objections that you might
> have to that report, and when those matters are resolved, the
> Court will then be able to determine what the appropriate
> sentence should  be.  Do you understand that?

(*Id.*, ECF p. 10).  Defendant indicated that he understood and that he and his counsel had discussed the federal sentencing guidelines.  (*Id.*).  Defendant also stated that he understood the guidelines were not mandatory but that they were "matters the Court has to consider."  (*Id.*).  Defense counsel stated that they had submitted their own guideline calculation in a motion for release filed earlier.  (*Id.*, ECF pp. 10-11).  He also stated that he and Defendant had "discussed the possibility of enhancements" and intended to "vigorously" contest them.  (*Id.*, ECF p. 18).  Defendant stated he had no questions about anything and declined an offer from the court to clarify anything for him.  (*Id.*, ECF p. 16).

Third, Defendant claims the government breached the agreement when it failed to recommend a three-level reduction for acceptance of responsibility.  Paragraph 13 of the agreement controls the government's obligation to move for a reduction in the offense level for Defendant's acceptance of responsibility.  It provides as follows:

> Counsel for the defendant has affirmatively indicated to the United States Attorney's Office that the defendant not only wishes to enter a plea of guilty, but will clearly demonstrate a recognition and affirmative acceptance of responsibility as required by the sentencing guidelines.  Additionally, the defendant has assisted authorities in the investigation and prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate its resources efficiently.  Accordingly, if the defendant can adequately demonstrate this acceptance of responsibility to the Government, the United States Attorney's Office hereby moves that at sentencing the defendant receive a three-level reduction in the defendant's offense level for acceptance of responsibility.  The failure of the Court to find that the defendant is entitled to this three-level reduction shall not be a basis to void this Plea Agreement.

-17-

(Doc. 207 ¶ 13).

We provide some background on this claim.  The presentence report (PSR) calculated Defendant's offense level by including a two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice.  (PSR ¶ 63).  This enhancement was based on Defendant's knowledge that his wife had hidden computers and other information from authorities.  "Because the defendant and his wife, after realizing authorities were pursuing them and investigating the prostitution operation, destroyed and/or concealed evidence that was material to the investigation, a two-level increase [was] warranted . . . ."  (PSR ¶ 63).[9]

Additionally, the PSR gave Defendant no credit for acceptance of responsibility based on three grounds.  First, while Defendant had pled guilty, he had not accepted responsibility either by way of an interview with the probation officer or by submission of a letter.  (PSR ¶ 65).  Second, he had committed the obstruction of justice described above, which under Application note 4 to guideline section 3E1.1, indicated he had not accepted responsibility.  (*Id.*).  Third, as to a three-level reduction for acceptance of responsibility, under U.S.S.G. § 3E1.1, such a reduction is reserved not only for a defendant who clearly accepts responsibility for his offense, but who has also assisted authorities by timely notification of his intent to plead guilty so that the government can avoid preparing for trial and so that the government and the court can allocate resources

---

[9]  The PSR also noted that Defendant had obstructed justice when he "tried to convince his wife to not turn over that material to law enforcement unless she extracted a deal favorable to the defendant himself." (PSR ¶ 50).

more efficiently.  Based on information supplied by the prosecutor, Defendant had not

timely indicated his intention to plead guilty as the government had prepared extensively

for the first trial in April 2010 and then later for the trial in June 2010 before Defendant

pled guilty on June 3, 2010.  (PSR ¶ 66).

          Defendant filed objections to the PSR's calculation of the offense level and

the criminal history category, including objections to the two-level increase for obstruction

of justice and the failure to give Defendant a three-level reduction for acceptance of

responsibility.  On July 6, 2011, we rejected the objections.  (Doc. 281).  On the two-level

increase for obstruction of justice, we reasoned it was warranted by Defendant's attempt

to obstruct the government's access to the computer and documents, (Doc. 281, ECF p.

2), agreeing with one of the arguments in the government's sentencing memorandum.

(Doc. 278, ECF p. 6, government's sentencing memorandum).  On the failure to give

Defendant a three-level reduction for acceptance of responsibility, we denied the

objection for two reasons.  First, in agreement with an argument made in the

government's sentencing memorandum (Doc. 278, ECF pp. 8-9), Defendant just before

sentencing in December 2010 announced he wanted to withdraw his guilty plea but then

at the January 19, 2011, hearing scheduled on the motion to withdraw decided he did not

want to withdraw his plea after all.  (Doc. 281, ECF p. 2).  Second, in agreement with the

PSR, Defendant obstructed justice, and generally a defendant who does so is not entitled

to a reduction for acceptance of responsibility.  (*Id.*).

Defendant argues that the government acted in bad faith in agreeing to the acceptance-of-responsibility paragraph because it knew he would never get the reduction based on facts it knew about at the time the agreement was executed, that Defendant had obstructed justice by destroying and/or concealing evidence (i.e., computers) that was material to the investigation.  Defendant relies on *United States v. Roe*, 445 F.3d 202 (2d Cir. 2006).

Defendant's reliance on *Roe* is misplaced.  *Roe* is distinguishable.  In *Roe*, the government had agreed to move for a downward departure under U.S.S.G. § 5K1.1 based on the defendant's substantial assistance, if it was determined that he had fully cooperated.  *Id.* at 203-04.  The government refused to file the motion, basing its refusal on incidents that occurred before the plea agreement was executed.  The Second Circuit held that the government could not refuse to file the motion based on its dissatisfaction with the defendant's performance under the agreement based on events that occurred before the agreement was executed.  *Id.* at 207.

Here, the government did not refuse to move for a reduction in the offense level based on obstruction of justice, the event that occurred before the agreement was executed.  Instead, it gave as its reason the delay that Defendant caused as just before sentencing in December 2010 he announced he wanted to withdraw his guilty plea but then at the hearing scheduled on the motion to withdraw decided he did not want to

withdraw his plea.  (Doc. 278, ECF pp. 8-9).[10]  This is an event that occurred after the plea agreement was executed, and *Roe* does not support a government breach of the agreement here.

Fourth, Defendant claims the government breached the agreement when it advocated for a sentence based on dismissed counts of wire fraud.  On this argument, Defendant repeats his contention that the section 1028A(a)(1) aggravated identity theft offense requires an underlying offense, and the underlying offenses were dismissed as part of the plea agreement.  This claim lacks merit.  It was raised on appeal in Defendant's January 3, 2013, pro se brief at page 24 and rejected by the Third Circuit.  See note 3 above.  Additionally, as noted above, the government did not have to charge Defendant with a predicate offense to charge him with a violation of section 1028A(a)(1).  *United States v. Jenkins-Watts*, 574 F.3d 950, 970 (8th Cir. 2009).

Fifth, Defendant claims the government breached the plea agreement by arguing for the five-level enhancement in the section 2422(a) interstate prostitution count for additional victim prostitutes under U.S.S.G. § 3D1.4.  Defendant argues that the enhancement was in effect additional charges, and the agreement bars the bringing of additional charges.  We have already rejected this argument above.

Sixth, Defendant claims the government breached the terms of a "side agreement," an August 30, 2009, e-mail exchange.  According to Defendant, in that

_____

[10]  The government also said that Defendant had submitted a document entitled "Acceptance of Responsibility," (Doc. 240-1), but that it barely admitted criminal activity.  (Doc. 278, ECF pp. 8-9).

exchange the government agreed not to supersede Defendant's indictment in return for his dismissal of an appeal for his release from pretrial detention.

This claim lacks merit.  First, it was raised on appeal in Defendant's January 3, 2013, pro se appellate brief at page 19, and the Third Circuit rejected it.  See note 3 above.  Second, we have reviewed the e-mails, attached as an exhibit to Defendant's motion (Doc. 367, ECF pp. 49-51).  In the exchange, the prosecutor only said that he would not discuss a plea deal while the appeal was pending; he did not agree not to supersede the indictment.  Third, the plea agreement contains a merger clause, specifying that it was "the complete and only plea agreement between" the parties, that it "supersedes all prior understandings, if any, whether written or oral," and that it "cannot be modified other than in writing that is signed by all parties."  (Doc. 207 ¶ 32).  As the government argues, enforcement of this alleged "side agreement" is barred by the merger clause.  *See United States v. Moody*, 485 F. App'x 521, 523-24 (3d Cir. 2012)(nonprecedential)(the defendant could not rely on the government's purported agreement in an e-mail exchange to move for a downward departure under U.S.S.G. § 5K1.1 when the defendant later signed a plea agreement containing a merger clause).

Seventh, Defendant claims the government breached the terms of an April 16, 2009, proffer agreement.  According to Defendant, that agreement provided that any information Defendant supplied was supposed to be off the record.  Defendant complains that, contrary to the agreement, the government used the information obtained for additional charges, counts of conviction and sentencing enhancements.

This claim lacks merit.  First, this claim was raised on appeal in Defendant's January 3, 2013, pro se appellate brief at page 20, and the Third Circuit rejected it.  See note 3 above.  Second, as the government argues, enforcement of this "side agreement" is barred by the plea agreement's merger clause.  We add that the plea agreement allowed the government at sentencing "to bring to the Court's attention . . .  all relevant information with respect to the defendant's background, character, and conduct including the conduct that is the subject of the" dismissed charges, (Doc. 207 ¶ 18), a provision that directly contradicts Defendant's contention that the government could not use information he supplied.  In the plea agreement, Defendant also acknowledged that "[n]o other promises or inducements" have been or will be made to the defendant "nor any predictions or threats . . . made in connection with this plea." (*Id.* ¶ 32).  Further, during his guilty-plea colloquy, he reaffirmed that no other promises or any threats had been made to induce his plea.  (Doc. 253, ECF p. 16).  In these circumstances, the merger clause bars Defendant's reliance on the alleged April 16, 2009, proffer agreement.  *See Tyra v. United States*, 270 F. App'x 410, 414-16 (7th Cir. 2008)(nonprecedential).

Eighth, the government breached the terms of the May 22, 2009, "side agreement" when it did not move to give him credit for substantial assistance, as it did for his wife, as this side agreement recognized that he was to receive the same credit for

cooperation as his wife did.[11]  This side agreement is based on a letter dated May 22,

2009, and written by the prosecutor to counsel for Defendant's wife.  The letter reads:

> In our prior conversations, I expressed my belief that your client has possession of a computer that contains information relevant to the above-captioned case and investigation.  I have provided a proffer letter that covers information contained on that computer.  Clearly, we would consider any information on that computer as being provided by your client if she provides that computer to the Government.  You have inquired whether information contained on that computer, if it is provided to the Government by your client, would also be considered for the benefit of co-defendant Roger Sedlak.  Such a concern is understandable in light of the marital status of these co-defendants.
>
> We realize information on that computer also is relevant to Mr. Sedlak's case and likely was obtained, at least in part, by him.  As a practical matter, therefore, if Mr. Sedlak ultimately enters into a cooperation agreement with the Government and receives credit for providing information about the case, he would also be eligible to be credited for information contained on the computer.
>
> I hope this information is helpful in counseling your client.  As always, feel free to contact me with any other questions or concerns.

(Doc. 367, ECF pp. 47-48).

Defendant contends that this letter shows that the government: (1)

acknowledged Defendant's cooperation in the investigation of the case; (2) extended the

same or like benefits of cooperation to Defendant as the government did to his co-

---

[11]  Defendant also claims this is gender discrimination.  We reject this claim.  First, Defendant does not support the claim with specific allegations, and a vague claim for relief in 2255 proceedings is not sufficient.  Second, as the Third Circuit noted on direct appeal, there is a reasonable basis for the difference in treatment between Defendant and his two female co-defendants.  *Sedlak*, 529 F. App'x at 255-56.

defendant spouse; and (3) recognized that Defendant and his wife were a "'package deal' warranting special consideration to be exercised throughout the proceedings." (Doc. 367, ECF p. 33).

Defendant asserts the government breached this agreement by failing to move for a downward departure on Defendant's behalf for substantial assistance after his wife turned over the computer. For her cooperation, his wife's charges were reduced to misprision of a felony and other sentencing considerations that resulted in a sentence of two year's probation. In contrast, Defendant's indictment was superseded and he was sentenced to 145 months' imprisonment. Defendant buttresses the argument with comments his counsel made at the January 19, 2011, hearing on his motion to withdraw his guilty plea which explained Defendant's understanding of the May 22, 2009, letter and how Defendant believed the government had acted in bad faith. (Doc. 263, ECF pp. 6-8). He also cites comments from the prosecutor at the same hearing, which Defendant finds significant because the comments do not reveal the government's understanding of the May 22, 2009 letter. (*Id.*, ECF p. 10).

This claim lacks merit. First, it was raised on direct appeal in Defendant's January 3, 2013, pro se appellate brief in section A, and the Third Circuit rejected it. See note 3 above. Second, as the government argues, enforcement of this "side agreement" is barred by the plea agreement's merger clause, for the reasons set forth above. Third, the letter does not have the three effects Defendant ascribes to it. It is not a cooperation agreement; it merely states that if Defendant ultimately enters into a cooperation

agreement and does receive credit for providing information about the case, he would also be eligible for credit for information contained on the computer.

E.  *The Claim that 18 U.S.C. § 2422(a) Violates the First Amendment by Infringing on Private Communications*

Defendant claims that section 2422(a) violates the First Amendment by making communication between an employer and employee illegal, Defendant apparently being the "employer" and the prostitutes the "employees."  Defendant emphasizes that he does not complain about the criminalization of prostitution but argues that in criminalizing persuasion, inducement or enticement to engage in prostitution, the section illegally punishes speech.  He also thinks it significant that his offense involved adults and not minors.

We reject this claim.  As the government points out, the Third Circuit has already found it to be meritless.  529 F. App'x at 256.  The case of *United States v. Tykarsky*, 446 F.3d 458, 472-73 (3d Cir. 2006), is not exactly on point, because it deals with a First Amendment challenge to 18 U.S.C. § 2422(b), but supports our rejection of the claim.

F.  *The Claim that the Court Erred in Calculating the Sentencing Guideline Range*

In his correction (Doc. 395, ECF pp. 7-11) to his 2255 motion, Defendant claims the court made the following errors in calculating his sentencing guideline range. First, the May 2006 Hunterdon County, New Jersey, conviction was improperly used to

set Defendant's criminal history category at II, instead of I, because it was just a disorderly-persons conviction.  Defendant asserts he has obtained the record of conviction, which supports his allegation.  Second, the January 7, 1997, conviction in Monmouth County, New Jersey, actually occurred in September 1996, outside the ten-year period for its use in setting the criminal history category.  Defendant asserts he is waiting for Monmouth County to supply him with the record that would support his assertion.  Third, the court improperly applied a five-level enhancement under U.S.S.G. §§ 2G1.1 and 3D1.4 to the base offense level rather than follow the correct procedure under U.S.S.G. §§ 3D.1-4 for multiple counts of conviction.

We reject these arguments.  Contrary to Defendant's first claim, the Hunterdon County conviction was not for being a disorderly person; it was for theft by lawful taking.  Additionally, he has not presented us with the record of conviction showing only a disorderly-persons conviction.  In fact, the only record of conviction he has supplied us with is for the Hunterdon County conviction for theft by unlawful taking.  (Doc. 395, ECF pp. 15-16).   As to Defendant's second claim, he has supplied us with no records indicating that the conviction actually occurred in September 1996.  As to his third claim, we have reviewed Defendant's argument as well as the analysis in the presentence report concerning the calculation of Defendant's sentencing guideline range.  (PSR ¶¶ 52-68, and 135).  We agreed with the PSR's calculation then, and we adhere to it now.

G.  *Other Claims*

In a motion (Doc. 421) to amend his 2255 motion, Defendant claims the court erred at the pretrial conference held on April 6, 2010, in denying him his right to represent himself.  In a document (Doc. 430) styled as a "supplemental brief in support of motion to vacate," Defendant does not simply supplement his briefing but adds new claims of denial of his right of self-representation when motions to do so were filed on December 10, 2009, and December 30, 2009.  In a document (Doc. 431) styled as an "emergency motion to vacate," Defendant reiterates his argument that the court denied him his right of self-representation and adds a new claim that the court (as opposed to the prosecutor) denied him his right to joint representation with his wife.

These claims lack merit.  We begin with the motions to proceed pro se filed on December 10 and 30, 2009.  The December 10 motion was, as noted, denied on December 17, 2009, as having been mooted by the recent appointment of the attorney who would represent Defendant during his guilty plea and sentencing.  The December 30 motion was denied on January 7, 2010, by an order in which we noted that Defendant stated in his motion that it was not his choice to proceed without an attorney.  Finally, as the government notes in its opposition (Doc. 432), at the April 6, 2010, hearing while Defendant initially stated he wanted to proceed pro se, (Doc. 340, ECF p. 12), he ultimately decided he wanted his then new counsel to represent him.  (*Id.*, ECF p. 22, 34, 35, 42-43 and 45-46).  The court therefore did not deny him his right to represent himself.

The court did deny Defendant's July 27, 2009, pro se motion (Doc. 79) for joint representation, but did so because by the time that motion was filed Defendant was represented by separate counsel, (Doc. 84, order of August 3, 2009), a proper ruling.

In his reply brief (Doc. 423), Defendant makes the following claims.  First, he would not have entered into the plea deal if he had to plead guilty to a "wire fraud count."  (*Id.*, ECF p. 12).  This claim lacks merit because he was not required to plead guilty to a wire fraud count, nor did he plead guilty to a wire fraud count.

Second, he claims he would not have entered into the plea deal if he had known that SORNA and state sex-offender registration requirements would be imposed.  (*Id.*, ECF p. 14).  This claim lacks merit because the court did not impose these requirements.  It merely required Defendant to register as a sex offender if required under state law.  Defendant also argues that once the court decided to impose SORNA and state registration requirements on Defendant, it was obligated to advise Defendant of this and give him an opportunity to withdraw his plea.  (*Id.*).  This argument lacks merit because the court would not know at the guilty-plea colloquy whether or not it would impose such requirements.  Additionally, in any event, as just noted, the court did not impose these requirements.  It merely required Defendant to register as a sex offender if required under state law.

Third, Defendant claims he would not have entered into the plea agreement if the government had stated it would seek enhancements.  (*Id.*, ECF pp. 14-15).  This claim lacks merit for the reasons given in rejecting Defendant's argument that the

government breached the plea agreement by arguing for enhancements.  The plea

agreement and change-of-plea hearing revealed that enhancements could be sought.

Fourth, Defendant claims he would not have entered into the plea

agreement if he had known a ten-year term of supervised release could be imposed for

the section 2422(a) offense.  (*Id.*, ECF p. 15).  This claim lacks merit.  It appears from

this record that he did know that a ten-year term of supervised release could be imposed.

In the plea agreement, Defendant recognized "that the total, maximum possible sentence

for all four charges was "67 years in prison" and that a term of supervised release could

be imposed "of at least 5 years to life."  (Doc. 207 ¶ 6).  He also recognized that the court

could impose "the maximum sentence of imprisonment for 67 years" and "a maximum

term of supervised release up to life."  (*Id.* ¶ 19).

Fifth, Defendant claims he would not have entered into the plea deal

without inclusion of the "side documents"; counsel said he would zealously pursue the

benefits of those agreements.  (*Id.*, ECF pp. 16-17).  Defendant asserts an evidentiary

hearing is necessary to ascertain the "true intent of those documents."  Defendant

focuses on the May 22, 2009, letter.  He asserts that counsel told him that paragraph 18

of the plea agreement covered the obligation of the government to comply with the May

22, 2009, letter.  Paragraph 18 of the agreement provided that at the sentencing, the

government would "be permitted to bring to the Court's attention, and the Court [would]

be permitted to consider, all relevant information with respect to the defendant's

background, character, and conduct including the conduct that is the subject of the"

dismissed charges.  (Doc. 207, ¶ 18).  Defendant asserts he had "the reasonable understanding" . . . that the government would honor the terms of the May 22, 2009, letter."  (Doc. 423, ECF p. 17).

This claim lacks merit.  There is no need for a hearing to determine the "true intent" of the May 22 letter.  Even if we assume that the letter survived the merger clause based on the alleged statements of counsel that the letter could be enforced by way of paragraph 18,[12] the letter simply does not have the effect Defendant claims it does, as noted above.  Further, counsel did argue the letter on Defendant's behalf at sentencing.  (Doc. 289, sentencing transcript, ECF p. 11).

Sixth, Defendant asserts he was on "prescription medications including a 'mood altering drug'" when he executed the plea agreement and pled guilty.  (*Id.*, ECF p. 22).  He claims the court "failed to inquire whether the Defendant was under the influence of medications" before entering his guilty plea.  (*Id.).*  This claim lacks merit.  We were not informed that Defendant had been taking medication and hence had no obligation to inquire into whether the medications rendered the plea involuntary.  *See United States v. Cole*, 813 F.2d 43, 46 (3d Cir. 1987).

H.  *Claims of Ineffective Assistance of Counsel*

In his 2255 motion (Doc. 381), Defendant makes various claims of ineffective assistance of counsel.  In his reply brief (Doc. 423) and other filings, he adds

---

[12]  Defendant asserts that the plea agreement "did not explicitly rescind" the letter. (Doc. 423, ECF p. 17).  Defendant is mistaken.  The merger clause provides that the plea agreement "supersedes all prior understandings."  (Doc. 207 ¶ 32).

to these claims of ineffectiveness.  We combine these claims and deal with them as follows.

Claims of ineffective assistance of counsel are governed by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  *Strickland* sets forth a two-prong test to establish ineffective assistance of counsel.  First, counsel's performance must be deficient.  *Palmer v. Hendricks,* 592 F.3d 386, 394 (3d Cir. 2010)(citing *Strickland*).  "Performance is deficient if counsel's efforts 'fell below an objective standard of reasonableness' under 'prevailing professional norms.'"  *Shotts v. Wetzel*, 724 F.3d 364 (3d Cir. 2013)(quoting *Strickland*).

Second, counsel's deficient performance must have prejudiced the defense. *Palmer*, 592 F.3d at 394 (citing *Strickland*).  "To demonstrate prejudice, 'a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  *Shotts*, 724 F.3d at 375 (quoting *Strickland*).

First, in his 2255 motion, Defendant claims counsel failed to investigate the facts of the case, failing even to interview one witness.  Counsel could not have given proper advice when he did not know the facts.  (Doc. 395, ECF p. 3).  In a related argument made in his reply brief (Doc. 423, ECF pp. 18-19), Defendant asserts that counsel never obtained the computer files that showed the case was like *United States v. Zitlalpopoca-Hernandez*, 495 F. App'x 833 (9th Cir. 2012)(nonprecedential).  In another

argument made in his reply brief, Defendant asserts counsel did not understand the facts in relation to the law; if he had, Defendant would not have entered into the plea agreement.  (Doc. 423, ECF p. 20).

Conclusory allegations are not sufficient for a 2255 claim.  Defendant's claims that counsel failed to investigate and failed to understand the law in relation to facts are such claims.  Similarly, Defendant does not allege how the computer files would have supported a defense based on *Zitlalpopoca-Hernandez*.  We note that in that case the Ninth Circuit dealt with the sufficiency of the evidence to sustain a section 2422(a) conviction for persuading an individual to travel in interstate commerce to engage in prostitution.  The court held that the evidence was insufficient when "[t]he evidence at trial demonstrated that it was [the individual] who persuaded [the defendant] to bring her to the United States, not the other way around."  495 F. App'x at 836.  Conversely, in the instant case, Defendant did not got to trial but instead entered a guilty plea admitting that he had persuaded or induced prostitutes to travel in interstate commerce.

Second, counsel failed to provide Defendant with draft jury instructions on the three offenses for conspiracy, prostitution and aggravated identity theft.  (Doc. 395, ECF p. 3).  If counsel had provided these instructions, Defendant would not have pled guilty or would have demanded a clearer plea agreement.  As part of this claim, Defendant also argues counsel failed to properly counsel him on the requirements of proof beyond a reasonable doubt.

-33-

This claim fails because a valid guilty-plea colloquy was conducted with Defendant.  Defendant also fails to state how counsel failed to instruct him on the reasonable doubt standard and why this would have caused him not to plead guilty.  We note that at the change-of-plea hearing, Defendant recognized that his guilty plea was an admission that the government's evidence was sufficient to prove his guilt beyond a reasonable doubt.  (Doc. 253, ECF p. 9).

Third, at the guilty-plea colloquy, counsel failed to express Defendant's concerns about the elements of the offenses when the court failed to discuss all of the charges with Defendant.  (Doc. 395, ECF p. 3).  If counsel had done so, Defendant would not have pled guilty.  This claim lacks merit.  The record shows that the prosecutor outlined the factual bases of the four counts of conviction.  (Doc. 253, ECF pp. 12-15).  Further, Defendant does not specify what his concerns were about the elements of the offenses so the claim fails because it is vague.  Additionally, when questioned by the court, Defendant denied that he had any questions about anything or that there was anything the court could clarify for him.  (Doc. 253, ECF p. 16).

Fourth, counsel failed to tell the court that Defendant's plea was "wired" to Defendant's spouse, Marianna Sedlak, a co-defendant, and that his wife pressured and coerced him into pleading guilty.  She coerced him by threatening him that he would not see his children if he did not plead guilty and that she did not want to be placed in the position of being forced to testify against him at trial.  (Doc. 395, ECF p. 3).  If not for Marianna Sedlak's coercion, Defendant would not have accepted the plea agreement.  In

a related argument presented in Defendant's reply brief, Defendant asserts that he and his wife were a "package deal" and counsel should have advised the court of this so that the court "could insure that the plea was entered into without the fear of coercion disguised and hidden by love." (Doc. 423, ECF p. 22). In his motion dealing with alleged breaches of the plea agreement, Defendant claims that he was coerced into the plea agreement because of a threat presented by paragraph 33 of the plea agreement. (Doc. 367, ECF p. 23).

Defendant's coercion claim lacks merit. First, as noted above, Defendant's plea was not "wired" to his spouse, and they were not a "package deal"; Marianna Sedlak had her own lawyer. Second, even if we assume Marianna Sedlak threatened that he would not see his children if he did not plead guilty, this statement is not sufficient to render his guilty plea involuntary. Defendant went through a valid guilty-plea colloquy. (Doc. 253, change of plea transcript). Additionally, during that colloquy, he denied that "anybody" had threatened him to induce his plea of guilty. (*Id.*, ECF p. 16). "'Solemn declarations in open court carry a strong presumption of verity.'" *United States v. Schwartz*, 403 F. App'x 781, 784 (3d Cir. 2010)(nonprecedential)(quoting *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977)). In these circumstances, any alleged threat that he would not see his children did not make the plea involuntary. *Schwartz*, 403 F. App'x at 785 (wife's alleged threat that if the defendant was found guilty and went to jail, she would not be there when he got out did not invalidate guilty plea, noting that "family pressure to plead guilty provides an

insufficient basis for granting leave to withdraw a plea of guilty"); *United States v. Robinson*, 427 F. App'x 163, 167 (3d Cir. 2011)(nonprecedential)(family pressure to plead guilty is not sufficient to invalidate a guilty plea); *United States v. Gwiazdzinski*, 141 F.3d 784, 788 (7th Cir. 1998)(district court ruled that alleged threat by wife that the defendant would not see his child if he did not plead guilty was not coercive and court of appeals would not disturb that ruling when the allegation directly contradicted the defendant's statement at his guilty-plea colloquy that his plea was completely voluntary); *Webb v. Carroll*, No. 02-CV-583, 2003 WL 22299036, at *9 (D. Del. Oct. 6, 2003)(allegation that ex-girlfriend told the defendant he would never see his children again if the case went to trial did not invalidate the guilty plea when the defendant testified at his guilty-plea colloquy that his plea was voluntary). Our conclusion applies with equal force to Defendant's assertion that his wife did not want to be placed in the position of being forced to testify against him at trial.

Defendant asserts that paragraph 33 "was a direct threat requiring the Defendant to make sure the Court accepted the plea." (Doc. 367, ECF p. 24).[13]  This

---

[13]  Paragraph 33 provides as follows:

In the event that the defendant does not plead guilty, the plea is not accepted by the Court, or the plea is withdrawn, the defendant agrees that he or she hereby waives any protection afforded by Section 1B1.8(a) of the Sentencing Guidelines, Rule 11(f) of the Federal Rules of Criminal Procedure, and Rule 410 of the Federal Rules of Evidence and that any statements, interviews, or testimony given by the defendant as part of any efforts to cooperate with the Government, including any "proffer" or "off-the-record" statements made by the defendant made in connection with negotiations resulting in the Plea Agreement will be admissible against the defendant without limitation in any civil or criminal proceeding.

claim lacks merit.  First, Defendant does not specify why this is so.  Second, paragraph 33 was only enforceable after Defendant signed the plea agreement, and the circumstances indicate that Defendant executed the agreement voluntarily.  The defendant signed the agreement under a paragraph stating: "I have read this Agreement and carefully reviewed every part of it with my attorney. I fully understand it and I voluntarily agree to it."  His attorney also signed it under a paragraph stating: "I am the defendant's counsel. I have carefully reviewed every part of this Agreement with the defendant.  To my knowledge my client's decision to enter into this agreement is an informed and voluntary one."  At the change-of-plea hearing, Defendant denied that anyone had threatened him to induce a plea of guilty.  (Doc. 253, ECF p. 16).

Fifth, counsel failed to discuss at the change–of-plea hearing Defendant's reasonable understanding of the plea agreement when there was evidence at the hearing that the government intended to retreat from the agreement.  (Doc. 395, ECF p. 3).  This claim is dismissed as vague and conclusory.  A review of the change-of-plea transcript also reveals no indication that the government intended to retreat from the agreement.

Sixth, counsel failed to prevent Defendant from pleading guilty after the government retreated on the record from Defendant's understanding that the government would not advocate for SORNA registration and the increased term of supervised release and that the court would not impose those conditions on Defendant.  (Doc. 395, ECF pp. 3-4).  As part of this claim, Defendant also contends that counsel failed to put on the

─────────────────────

(Doc. 207 ¶ 33).

record at the change-of-plea hearing how the government justified its estimate of the sentencing range when the facts Defendant admitted to by his guilty plea did not support the government's range.  (*Id.*, ECF p. 4).

This claim lacks merit.  The government did not advocate for SORNA registration nor for any increased term of supervised release.  And as noted above, the requirement that Defendant register as a sex offender, if required under state law and the ten-year term of supervised release, were perfectly proper.  Additionally, it was not a purpose of the change-of-plea hearing to provide factual support for the government's estimate of the sentencing range.  Further, at the change-of-plea hearing, Defendant indicated he understood that the court had to establish the sentencing range, after preparation of a presentence report.  (Doc. 253, ECF p. 10).

Seventh, counsel failed to request a presentence report at the time of the change-of-plea hearing.  Such a request would have clarified Defendant's sentencing exposure so that Defendant either would have been sentenced pursuant to his reasonable expectations or he would not have pled guilty. (Doc. 395, ECF p. 4).  This claim lacks merit.  As noted above, a presentence report is prepared after a defendant pleads guilty.  Defendant was advised of this.  He was also advised of the maximum sentence he could receive for each offense.  (Doc. 253, ECF pp. 2-5).  He still pled guilty.

Eighth, counsel failed to tell the court about the May 22, 2009, letter which directly linked Defendant's cooperation with the cooperation of his co-defendant spouse, Marianna Sedlak.  Had this letter been brought to the court's attention, Defendant would

have received its full benefit or Defendant would not have executed the plea agreement. (Doc. 395, ECF p. 4).  In a related argument made in his motion to supplement (Doc. 433, ECF p. 2), Defendant asserts counsel was ineffective in not arguing that this letter provided that he would receive the same credit for substantial assistance as his co-defendant wife did.  Defendant asserts he would not have entered into the plea agreement if he had known he would not have received credit based on this letter.  (*Id.*).

As noted above, Defendant contends the May 22, 2009, letter shows that the government: (1) acknowledged Defendant's cooperation in the investigation of the case; and (2) extended the same or like benefits of cooperation to Defendant as the government did to his co-defendant spouse.  (Doc. 367, ECF p. 33).  However, as concluded above, the letter does not have the three effects Defendant ascribes to it.  It is not a cooperation agreement; it merely states that if Defendant ultimately enters into a cooperation agreement and does receive credit for providing information about the case, he would also be eligible for credit for information contained on the computer.  Defendant could not have reasonably relied on this letter to anticipate an offense level reduction based on cooperation.  We also note that counsel did argue Defendant's understanding of the May 22, 2009, letter at sentencing.  (Doc. 289, ECF pp. 11-12).

Ninth, counsel failed to discover the government's true intentions in sentencing, and counsel grossly miscalculated the guideline range as twelve to eighteen

months.[14]  Defendant would not have pled guilty if he had known that enhancements could lead to a sentence of 145 months.  Instead, he would have sought clarification or would have proceeded to trial and required the government to prove the enhancements beyond a reasonable doubt.  (Doc. 395, ECF p. 4).  In a related argument raised in Defendant's motion to supplement (Doc. 433, ECF p. 5), Defendant asserts that the plea agreement implied that no enhancements would apply to Defendant's sentence and that counsel should have argued that the enhancements breached the agreement.

These claims lack merit.  In the plea agreement, Defendant recognized "that the total, maximum possible sentence for all four charges was "67 years in prison" and that a term of supervised release could be imposed "of at least 5 years to life." (Doc. 207 ¶ 6).  He also recognized that the court could impose "the maximum sentence of imprisonment for 67 years" and "a maximum term of supervised release up to life." (*Id.* ¶ 19).  He further agreed "that any legal and factual issues relating to the application of the Federal Sentencing Guidelines to the defendant's conduct, including facts that support any specific offense characteristic or other enhancement or adjustment and the appropriate sentence within the statutory maximums provided for by law, will be determined by the Court after briefing, or a pre-sentence hearing, or at a sentencing hearing.  (*Id.* ¶ 1).  Defendant was advised he could make objections to the presentence report.  (*Id.* ¶ 16).  The government could recommend a sentence "that it consider[ed]

---

[14]  Actually, counsel had calculated the guideline range as fifteen to twenty-one months with the addition of the twenty-four months consecutive sentence required for the aggravated identity theft conviction for a total of forty-five months.  (Doc. 253, ECF p. 18, change-of plea hearing).

appropriate based on the nature and circumstances of the offense and the defendant's

participation in the offense," and "specifically reserve[d] the right to recommend a

sentence up to and including the maximum sentence of imprisonment . . . ." (*Id.* ¶ 14).

The agreement also provided that at the sentencing, the government would "be permitted

to bring to the Court's attention, and the Court [would] be permitted to consider, all

relevant information with respect to the defendant's background, character, and conduct

including the conduct that is the subject of the" dismissed charges.  (*Id.* ¶ 18).

At the change-of-plea hearing, the prosecutor stated that Count 1 had a

maximum term of imprisonment of five years and a maximum period of supervised

release of three years.  (*Id.*).   He stated that Count 3 had a maximum term of

imprisonment of twenty years and a maximum period of supervised release of five years

to life.  (*Id.*, ECF p.3 ).  He stated that Count 5 had a maximum term of imprisonment of

twenty-two years and a maximum period of supervised release of three years to life and a

minimum term of imprisonment of two years to be served consecutively to any other term

of imprisonment imposed.  (*Id.*, ECF p. 3, 4-5).  He stated that Count 18 had a maximum

term of imprisonment of twenty years and a maximum period of supervised release of

three years.  (*Id.*, ECF pp. 3-4).

The prosecutor noted the court was not bound by the agreement and could

impose an appropriate sentence after the preparation of a presentence report.  (*Id.*).

Defense counsel noted that the above-quoted language from paragraph 2 had been

stricken.  He also challenged the language in paragraph 1, what he called "similar

language" to paragraph 2, which stated that Count 3 had "a maximum term of supervised

release of at least 5 years and up to life."  (Doc. 253, ECF p. 6).  Defense counsel stated

his belief that a minimum term of supervised release of five years would apply only to a

sex offense involving minors.  (*Id.*).

The court asked if the government had estimated the guideline range.  The

prosecutor replied:

> I have, Your Honor.  And this is a preliminary estimate, and I
> have no doubt that [defense counsel] will have a more
> conservative view of the guidelines than I do.  But at this point
> I would estimate a range of 78 to 97 months, about six and a
> half to eight years as a guideline range.

(*Id.*, p. 7).  The court then stated:

> Okay.  And I emphasize to [defense counsel] and Mr.
> Sedlak that that is just a question I ask the Government to
> understand what the Government's position is as to the likely
> sentence in this case, but, of course, that will be determined
> at a later time.

(*Id.*, p. 7).

The court then conducted a colloquy with Defendant under Fed. R. Crim. P.

11(b).  In connection with a sentence, the court stated:

> You heard [the prosecutor] outline the maximum penalties for
> these four offenses.  Your sentence can't be determined until
> a presentence report is prepared.  You and [defense counsel]
> will have an opportunity to make any objections that you might
> have to that report, and when those matters are resolved, the
> Court will then be able to determine what the appropriate
> sentence should  be.  Do you understand that?

(*Id.*, p. 10).  Defendant indicated that he understood and that he and his counsel had discussed the federal sentencing guidelines.  (*Id.*).  Defendant also stated that he understood the guidelines were not mandatory but that they were "matters the Court has to consider."  (*Id.*).  Defense counsel stated that they had submitted their own guideline calculation in a motion for release filed earlier.  (*Id.*, pp. 10-11).  He also stated that he and Defendant had "discussed the possibility of enhancements" and intended to "vigorously" contest them.  (*Id.*, p. 18).

Defendant denied that, aside from the plea agreement, he had been promised anything to plead guilty.  (*Id.*, p. 16).  He also denied that anyone had threatened him to induce a plea of guilty.  (*Id.*).  Defendant stated he had no questions about anything and the court did not have to clarify anything for him.  (*Id.*).

In the face of these contractual provisions and the acknowledgements at his change-of-plea hearing, Defendant cannot argue that his lawyer was ineffective in calculating the sentencing range.  *See United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007).  Nor can Defendant argue that he would not have pled guilty if he had known the enhancements would have led to a sentence of 145 months.  Defendant pled guilty knowing the court could impose the maximum sentence of sixty-seven years of imprisonment.  Nor is Defendant correct in asserting that the plea agreement implied that no enhancements would apply to Defendant's sentence.  Paragraph 1 of the plea agreement specifically recognized that enhancements could apply.

Tenth, counsel failed to understand that each prostitute represented a separate count of conviction for the section 2422(a) offense.  Counsel and a previous lawyer who represented Defendant told him that a plea of guilty to a single count for a violation of section 2422(a), the interstate prostitution offense, "would limit the Defendant's exposure at [s]entencing."  (Doc. 395, ECF p. 4).  Defendant asserts that had his lawyer understood that each individual prostitute, in effect, formed a separate count of conviction, the outcome of the proceedings would have been different.

This argument is too vague to consider.  Defendant provides no specifics about the advice that was given concerning how a plea of guilty to a single count of interstate prostitution would limit his sentencing exposure, or what Defendant means when he says he was advised that his sentencing exposure would be limited.

Eleventh, counsel failed to recognize that *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), required the enhancements to be alleged in the indictment.  As part of this claim, Defendant asserts that after *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed. 2d 403 (2004), a Department of Justice memo (the "Wray memo") advised federal prosecutors to include all enhancements in the indictment.  Defendant asserts counsel should have raised this argument at sentencing.  (Doc. 395, ECF pp. 4-5).

This claim lacks merit.  *Apprendi* only applies to facts that increase the statutory maximum punishment for a crime.  *See United States v. Smith*, 751 F.3d 107,

117 (3d Cir. 2014).  *Alleyne* only applies to facts that increase the statutory minimum for a crime.  *Id.*  Within the statutory range, the sentencing court can still enhance a sentence under the guidelines based upon judicial fact finding.  *Id.*  In light of *Smith*, citation to *Winship* is unavailing.

Twelfth, counsel failed to discover that Defendant's May 2006 conviction in Hunterdon County, New Jersey, was a disorderly-persons offense, not theft by unlawful taking.  (Doc. 395, ECF p. 5).  According to Defendant, the disorderly-persons offense does not count in determining Defendant's criminal history category so that Defendant's criminal history category should have been I, not II, thereby reducing the sentencing range.

This argument lacks merit.  As noted above, the Hunterdon County conviction was not for being a disorderly person; it was for theft by lawful taking.  Additionally, Defendant has not presented us with the record of conviction showing only a disorderly-persons conviction.  In fact, he has attached to his 2255 motion a record showing that his conviction was indeed for theft by unlawful taking.  (Doc. 395, ECF p. 5).

Thirteenth, counsel failed to investigate the other offense used to establish his criminal history category, the January 7, 1997, conviction in Monmouth County, New Jersey.  Defendant asserts he was actually sentenced on this offense in August or September 1996, outside the ten-year period for its use in setting the criminal history category.  Defendant asserts he is waiting for Monmouth County to supply him with the record that would support this claim.  (*Id.*).  This claim lacks merit.  Defendant has not

provided us with any record that supports the assertion that sentencing actually happened in August or September 1996.

Fourteenth, counsel failed to advise Defendant that a guilty plea would waive his rights under the Speedy Trial Act and to assert violations of his Fourth Amendment rights.  If counsel had told him about the waiver, Defendant would not have entered into the plea agreement or would have entered a conditional plea preserving the issues.  As part of this claim, Defendant asserts counsel did not attempt to exclude evidence obtained without a search warrant and used against Defendant at sentencing.  Counsel also failed to object to the introduction at sentencing of information obtained off the record and excluded by the terms of Defendant's proffer agreement.  (Doc. 395, ECF pp. 5-6).

This claim fails because it is conclusional.  Defendant does not allege the facts showing that he would not have entered a guilty plea if his lawyer had told him he was waiving his rights under the Speedy Trial Act or under the Fourth Amendment by doing so.  He has also not alleged the facts showing that he would not have entered a guilty plea if counsel had filed a motion asserting his Fourth Amendment claim.  The remaining part of the claim lacks merit.  As noted above, any proffer agreement did not survive the merger clause in the plea agreement.

We add in connection with the Speedy Trial Act claim and Fourth Amendment claim that we told Defendant during his guilty-plea colloquy that the two motions pending before the undersigned and the four appeals he had pending in the

Third Circuit would be mooted by his guilty plea.  (Doc. 253, ECF p. 11).  He

acknowledged that would happen.  (*Id.*).  This exchange goes against any argument that

Defendant did not understand that after his plea of guilty, only sentencing issues would

remain.

        Fifteenth, counsel failed to assert an *Apprendi* violation for the court's

imposition of a ten-year term of supervised release.  (Doc. 395, ECF p. 6).  We reject this

claim.  As noted above, the imposition of a ten-year term of supervised release does not

violate *Apprendi.*

        Sixteenth, counsel failed to argue that the government breached the terms

of the plea agreement when Defendant was subjected to SORNA registration and a ten-

year term of supervised release.  Counsel knew that Defendant would not have pled

guilty if these were part of the plea agreement.  In his motion dealing with the

government's alleged breaches of the plea agreement, Defendant also claims that

counsel was ineffective in not challenging the government's breaches of the agreement.

(Doc. 367, ECF p. 39).

        We reject this claim.  As noted above, the requirement that Defendant

register as a sex offender, when required by state law, and the imposition of a ten-year

term of supervised release did not violate the plea agreement, so counsel could not have

been ineffective in not arguing that these were government breaches of the agreement.

As also noted above, Defendant entered a valid guilty plea, knowing that he could be

subject to supervised release for life, so he cannot now complain that he would not have

entered a guilty plea if he had known of these conditions.

Seventeenth, counsel filed a motion to withdraw the guilty plea on December 13, 2010 (Doc. 246) when he should have filed a motion to enforce the plea agreement.  (Doc. 395, ECF p. 6).  Defendant did not want to withdraw his plea, only require the government to honor the agreement.  However, when counsel filed a motion to withdraw the guilty plea, counsel allowed the government to argue, based on the motion to withdraw the plea, against Defendant's objections to the presentence report that Defendant was not entitled to a reduction in his offense level for acceptance of responsibility.  (Doc. 278, Gov't sentencing brief, ECF p. 8).

In ruling on the objections, we accepted the government's argument.  (Doc. 281, court's sentencing memorandum, ECF p. 2).  However, in refusing to give Defendant credit for acceptance of responsibility, we also had a second reason, that Defendant had committed obstruction of justice "[b]ecause the defendant and his wife, after realizing authorities were pursuing them and investigating the prostitution operation, destroyed and/or concealed evidence that was material to the investigation . . . (PSR ¶ 63).  Under Application note 4 to guideline section 3E1.1, this indicated Defendant had not accepted responsibility.  (Doc. 281, court's sentencing memorandum, ECF p. 2).  This claim therefore lacks merit as Defendant cannot show prejudice from any alleged deficient performance by counsel.  He would still have not gotten credit for acceptance of responsibility.

In a motion (Doc. 393) to amend his 2255 motion (which was granted by order of July 17, 2014), Defendant claims counsel was ineffective in not challenging section 2422(a), the interstate prostitution offense, as a violation of the Tenth Amendment under *Bond v. United States*, ____U.S. ____, 131 S.Ct. 2355, 180 L.Ed.2d 269 (2011), and *Bond v. United States*, ____ U.S. ____, 134 S.Ct. 2077, 189 L.Ed.2d 1 (2014).  This claim lacks merit as the Third Circuit rejected it on direct appeal.  *Sedlak*, 529 F. App'x at 255 (rejecting the claim "that federal prostitution crimes interfere with the powers reserved to the states under the Tenth Amendment" as "both § 2421 and § 2422 contain an interstate commerce element").  We have also considered and rejected Defendant's argument made in his motion (Doc. 415) for leave to supplement that section 2422(a) cannot be justified based on Congress's authority over interstate commerce.

In his reply brief, Defendant claims counsel was deficient in failing to advise the court that Defendant "was on prescription medications including a 'mood altering' drug when entering the Plea Agreement and when pleading guilty before the Court." (Doc. 423, ECF p. 22).  Counsel also failed to advise the court "of Defendant's recent mild stroke suffered just days before entering the plea of guilty."  (*Id.*).

This claim relates to Defendant's ability to enter a knowing and intelligent plea of guilty.  *See United States v. Cole*, 813 F.2d 43, 46 (3d Cir. 1987).  However, section 2255 claims cannot be vague, and Defendant's claim is vague.  He does not allege what medications he was taking and how the medications affected his ability to

enter a knowing and voluntary plea.  Neither does he make those allegations for the stroke.

Further, full consideration of the record in this case, including the detailed plea agreement and the guilty-plea colloquy, clearly shows that Defendant's plea was knowing, and voluntary and was not adversely influenced by medication, as he now alleges.

In his motion (Doc. 433) to supplement, Defendant adds the following four claims.  First, had counsel told Defendant he would not receive credit based on the May 22, 2009, letter,  he would not have pled guilty.  (Doc. 433, ECF p. 2).  This claim lacks merit.  As noted, counsel filed a motion to withdraw the guilty plea on December 13, 2010 (Doc. 246), and a hearing was held on that motion on January 19, 2011.  At that hearing, it was made clear to Defendant that there was no certainty as to what benefit he would receive from the May 22, 2009, letter.  (Doc. 263, hearing transcript, ECF pp. 9-14).  Nonetheless, he decided not to withdraw his guilty plea.  (*Id.*, ECF p. 16).  We also note that counsel did argue Defendant's understanding of the May 22, 2009, letter at sentencing.  (Doc. 289, ECF pp. 11-12).

Second, counsel was ineffective in failing to request that the superseding indictment be dismissed as a breach of the August 30, 2009, e-mail exchange creating an agreement that the government would not file a superseding indictment.  (Doc. 433, ECF p. 2).  Defendant contends that if counsel had argued against the superseding indictment, Defendant would not have been subjected to Counts 5 and 18, counts which

increased Defendant's sentence.  (*Id.*).  This claim lacks merit.  As noted above, the e-mail exchange did not create an agreement between the government and Defendant that the government would not supersede Defendant's indictment in return for his dismissal of an appeal for his release from pretrial detention.

Third, counsel was ineffective in not arguing that the government had agreed that both SORNA and state sex-offender registration was not required and that a three-year term of supervised release would be imposed.  (*Id.*, ECF p.5 ).  This claim lacks merit.  The government did agree to strike the SORNA clause from the plea agreement, but that clause required the court to impose SORNA registration.  When the parties struck that clause, it did not mean that the court could not require Defendant to register as a sex offender, if required by state law.  Further, neither in the plea agreement or at the change-of-plea hearing did the government agree that Defendant's term of supervised release would be limited to three years.

Fourth, counsel was ineffective in not raising Defendant's request for joint representation and in not supporting his request to represent himself.  (*Id.*, ECF p. 6).  This claim lacks merit.  As noted above, Defendant had no right to joint representation with his wife and Defendant's request to represent himself was adequately litigated in connection with the motions to proceed pro se filed on December 10 and 30, 2009, and at the hearing held on April 6, 2010.

Fifth, counsel was ineffective in not requesting that the sentencing hearing be reconvened so that Defendant's wife could testify after she had been sentenced since

she had refused to testify before her sentencing so as not to incriminate herself.[15]  Her

testimony would have painted a completely different picture of Defendant's involvement

in the case.  (Doc. 433, ECF p. 7).  Also, she could have testified to her coercion of

Defendant.  (*Id.*).

This claim lacks merit.  Contrary to Defendant's representation, his wife did

testify on his behalf at his sentencing.  (Doc. 289, sentencing transcript, ECF pp. 32-35).

Also, as noted above, her alleged threat that Defendant would not see his children again

would not have been sufficient to render the guilty plea involuntary.

IV.  *Conclusion*

Having considered all of the claims, we will issue an order denying the 2255

motion.  The order will also deny a certificate of appealability, based on the analysis in

this memorandum.  However, Defendant is advised that he has the right for sixty (60)

days to appeal our order denying his 2255 motion, *see* 28 U.S.C. § 2253(a), and that our

denial of a certificate of appealability does not prevent him from doing so, as long as he

also seeks a certificate of appealability from the court of appeals.  *See* Federal Rule of

Appellate Procedure 22.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

March 10, 2015

---

[15]  Marianna Sedlak invoked her right against self-incrimination at the hearing held to resolve Defendant's objections to the presentence report.  (Doc. 272, ECF pp. 6-7).